UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                     CASE NO. 05-80216

v.                                   HON. LAWRENCE P. ZATKOFF

RICHARD KUSTRZYK,

       Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on January 4, 2007

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

On this date, Defendant Richard Kustrzyk appeared before this Court for purposes of being

sentenced in conjunction with his guilty plea to Counts 1, 2 and 3 of the Indictment filed against him

on March 3, 2005.  For the reasons set forth herein, the Court hereby imposes the following

sentence, which the Court believes is a reasonable disposition for this Defendant.  The Court orders

that Defendant be turned over to the Bureau of Prisons and confined for a term of 30 months, with

the recommendation that Defendant undergo alcohol and drug testing and/or treatment and

counseling with a registered sex offender therapist. Defendant's term of imprisonment is to be

followed by a three year term of supervised release.  Special conditions of Defendant's supervised

release shall include (but are not limited to) alcohol and/or drug testing and/or treatment, at the

discretion of the U.S. Probation Department, as well as counseling by a registered sex therapist with such frequency as deemed necessary by the U.S. Probation Department. The Court also imposes a special assessment of $300 pursuant to 18 U.S.C. §3013(a). The Court waives costs of confinement.

## II.  BACKGROUND

### A.     Underlying Conduct

On January 14, 2002, a U.S. postal inspector from Omaha, Nebraska (the "agent"), working in an undercover capacity, placed an advertisement in several newsgroups on the Internet. The advertisements stated that he had "a large collection of hard to find, taboo erotic video tapes" to sell or trade. On February 26, 2002, the agent received an e-mail from "cue@peoplepc.com," an address identified as that of Defendant. Defendant indicated that he was interested in trading or purchasing "hardcore pre-teen vids or pics. Boy/girl, men/girl, lotsa oral, white." The agent responded by sending Defendant a list of available videotapes, along with an order form and payment instructions. The video list included the title, price, length and description of the contents of each tape, including the ages of persons who appeared and the type of sexual acts portrayed. There was also a disclaimer statement that read: "You should know that these videos use actors that are really the ages shown. These are not tapes with adults who are made to look younger than they are."

The agent also explained that he would mail a letter to his customer with a three digit code to the same address to which the tapes would be mailed. Upon receipt of the code, the customer should e-mail it back so that the identity could be confirmed. In a separate e-mail on February 26,

2002, the agent inquired if Defendant had the same kind of material for trade.  Defendant replied that he would put something together on a CD-rom and send it to the agent's P.O. address.

On March 17, 2002, after receiving the three digit code, Defendant sent an e-mail to the agent confirming the three digit code that had been mailed to Defendant's home (713).  On March 25, 2002, the agent received a letter from Defendant with Defendant's return address.  The letter contained $150 in cash and a hand-printed note that read, "Here is my first payment for the order.  All codes "cue@peoplepc.com," yours: 713.  The birthday card will come a little later. . . . There will be other orders."  The note was signed "Rick."  The five videotapes ordered by Defendant are described as follows:

(1)     "Teaching Lolita Sex" - Contains scenes depicting two minor females (ages five and six) and an adult male engaging in lascivious exhibition of genitals, masturbation and genital/genital sex;

(2)     "Childrens Sex Party" - Contains scenes of two minor males and two minor females (reported ages of "none older than 10 or 11") engaged in masturbation, oral and genital/genital sex;

(3)     "Little One in Love" - Contains scenes of a minor female (age 9) and minor male (age 11) engaged in masturbation, oral and genital/genital sex;

(4)     "Schoolgirl and Boy" - Contains scenes of a minor male and female (ages 8 to 10) engaged in lascivious exhibition of genitals, masturbation, oral and genital/genital sex; and

(5)     "Home Video" - Contains scenes of a minor female (age 14) and two adult males engaged in masturbation, lascivious exhibition of genitals, and oral and anal sex.

Defendant and agent continued to e-mail each other, including the following correspondence from Defendant to the agent on March 19, 2002: "If what I send you think is anything good, maybe you could surprise me with one extra flick down the road."  On March 30, 2002, Defendant mailed an envelope to the agent with his return address.  Several days later, the agent received the envelope,

which included a birthday card and a CD.  The card had the following inscription: "Hope there's something new in here that you can use.  Thanks Cue."  Upon forensic examination, the CD was found to contain 11 movie files and 93 still images.  More than 50 of the images were depictions of child pornography involving prepubescent children.

Based on the above information, a federal search warrant was obtained.  The search warrant was executed on April 17, 2002, upon the controlled delivery of the videotapes that Defendant ordered.  When Defendant answered the door, he was advised of the identities of the law enforcement officers and the existence of the search warrant.  Defendant agreed to speak to the officers.  Defendant admitted that he ordered the child pornography, with the knowledge that it was illegal.  He signed a written statement attesting to the same.  During the search of the residence, a computer containing approximately 697 image files of child pornography (some of the images were duplicates) was seized.  Over 100 of the images involved children under the age of 12, and some of the images depicted sado-masochistic abuse, including one image depicting a prepubescent female wearing a "ball gag," lascivious exhibition of genitals, and anal penetration with an object.  Approximately 22 movie files containing child pornography also were confiscated, with at least seven of the movie files depicting children under the age of 12.

During the course of investigation, it was discovered that Defendant had also corresponded with at least two additional undercover postal inspectors in Pennsylvania and Nebraska in an effort to obtain child pornography.  In one e-mail correspondence, he attached an image of child pornography involving a minor female and adult male.  In response to an e-mail that was sent to Defendant from one undercover agent asking if Defendant had any materials Defendant would be willing to trade, Defendant e-mailed: "I have a few things but mostly pics and short-shorts."

Defendant ultimately mailed $160.00 to one of the undercover agents for videotapes.

As a result of the foregoing, the United States of America (hereinafter, the "Government") filed a three count Indictment on March 3, 2005, as follows: (1) Count 1 charged Defendant with Mailing Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1); (2) Count 2 charged Defendant with Receiving Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2); and (3) Count 3 charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On July 20, 2005, Defendant appeared before this Court and tendered a plea of guilty to Counts 1, 2 and 3 of the Indictment, without the benefit of a Rule 11 Plea Agreement.

**B.    Defendant**

Defendant has no prior contact with the criminal justice system. He is 54 years old and a lifelong resident of Michigan. He graduated from high school and enrolled in classes at Eastern Michigan University for three years before leaving to begin working in 1973. He has worked for Ford Motor Company/Visteon for the last 33 years on a full-time basis and is responsible for machine set-up.

In 1980, Defendant married and he and his ex-wife (they divorced in 1990) had two sons who are now approximately 21 and 19. Defendant has stated that there were problems during his marriage, including Defendant's representations that his ex-wife was mentally and physically abusive to their youngest son. The youngest son suffers from mental and emotional health problems and was committed to a mental health facility for two weeks at age 14. According to Defendant, his ex-wife also has a history of mental illness that has resulted in her being committed to a mental health facility on several occasions. After his youngest son's release from the mental health facility, both boys began living with Defendant.

5

Defendant's youngest son continues to live with Defendant.  Defendant's father, who is elderly and suffers from a deteriorating spine, congestive heart failure, prostate cancer and shingles, also lives with Defendant.  Defendant assists with his father's daily care and transports him to doctor appointments.  Defendant does not have any siblings that live nearby and assist with his father's care.  Defendant's eldest son has moved back in with Defendant's ex-wife.  Defendant suffers from hypertension and emphysema and has struggled with alcohol use/abuse as an adult.  Defendant considers alcoholism a "weakness" during periods of stress and stated that he drinks when he is not able to control a situation.  He has never participated in a substance abuse treatment.  He denies the use of any illegal drugs.

Defendant has been participating in mental health treatment since December 2004.  On February 14, 2005, Dr. Daniel P. O'Neill, M.A., L.L.P., a registered sex offender therapist, evaluated Defendant and has continued to see Defendant since conducting the evaluation.  According to Dr. O'Neill, Defendant is "anxious and depressed" and feels guilty for what he has done and the impact it will have on his family.  Both alcohol use and pornography have become his main coping tools and have contributed to his behavior resulting in the charges in this case.  Defendant denies he was the victim of sexual abuse or any other sexual deviancies, and he denies having had sex with males, children or prostitutes.  Defendant has been reluctant to become involved in any relationships since his divorce and has used pornography as his only sexual outlet.

Dr. O'Neill has opined that, based on Defendant's behavior, he will "do very well in treatment" and become accountable for his actions and the negative consequences to himself and to others.  Dr. O'Neill has also opined that with continued treatment, Defendant will develop new methods to face difficult situations and "give up" pornography and other short term, immediate

6

escapes as remedies to his problems.  Dr. O'Neill recommended that Defendant continue his participation in counseling and support groups to assist him in abstaining from pornography and alcohol use.

## III.  PRE-SENTENCE REPORT and GUIDELINE CALCULATIONS

By statute, Defendant may be sentenced to a term of imprisonment of up to 15 years for Counts 1 and 2 and up to 5 years for Count 3. The Court has reviewed the Presentence Investigation Report ("PSR") in this case and notes the following computations set forth therein.  Defendant has a base offense level of 17 for violation of the provisions of 18 U.S.C. § 2252.  In addition to the base offense level, a number of adjustments have been proposed in calculating the total offense level. The proposed adjustments are set forth immediately hereafter:

(1)  A two-level enhancement pursuant to 2G2.2(b)(1) because the "offense involved material depicting prepubescent minors and/or minors under the age of 12."

(2)  A five-level enhancement pursuant to 2G2.2(b)(2)(B) because the "offense involved the distribution of material for the receipt, or expectation of receipt, of a thing of value (i.e., other pornographic material), but not for pecuniary gain; therefore, the offense level is increased by five levels."

(3)  A four-level enhancement pursuant to 2G.2.2(b)(3) because "the material portrayed images that are considered sadistic and violent in nature."

(4)  A two-level enhancement pursuant to 2G2.2(b)(5) because "a computer was used for the transmission, receipt, or distribution of the material."

(5)  A three-level reduction pursuant to 3E1.1(a) and (b)(1) for acceptance of responsibility as he "entered a timely plea and made a truthful admission to the authorities as to his involvement in the instant offense."

As a result of the foregoing adjustments, the proposed total offense level for Defendant is 27.  As Defendant has no prior criminal conviction record, he has zero criminal history points and his

classification is a Criminal History Category I.   The Guideline range pursuant to the calculations set forth above is 70-87 months.  Neither Defendant nor the Government filed any objection to the PSR.

The Court adopts the proposed adjustments and agrees that the Guideline range for Defendant is 70-87 months.


## IV.  SENTENCING MEMORANDA

The Government filed a Sentencing Memorandum in which it recommended that the Court sentence Defendant within the Guideline range of 70-87 months.  The Government's Sentencing Memorandum tracks the PSR and the Government concurs with each of the enhancements detailed by the Probation Department (as set forth in Section III above).  The Government acknowledges that the Guidelines are now advisory in nature but advocates that the Court impose a prison term within the Guideline range.

Defendant filed a Sentencing Memorandum yesterday, wherein Defendant essentially asks the Court to (at least initially) sentence him to confinement in a community correction center or probation.  Defendant cites the need to provide care for his aged, infirm father as the primary reason for that request.   In addition, Defendant, for the first time, has provided the Court and the Government with a psychological evaluation prepared by Eric C. Ambers, Ph.D., F.L.P., a licensed clinical psychologist.  The psychological evaluation is undated but was prepared following an examination of Defendant (and apparently his father) on July 5, 2005.


## V.  ANALYSIS

The Court has thoroughly reviewed the file of Defendant, having paid particular attention to the PSR, the Sentencing Memorandum filed by the Government, the Sentencing Memorandum filed by Defendant, and the statements of Government counsel, counsel for Defendant and Defendant himself.  As the Government notes, the crimes to which Defendant has pled guilty carry prison terms of up to 15 years, and the applicable range under the Guidelines for Defendant is 70-87 months.  Though the Court  strongly detests the crime of child pornography, for the reasons set forth herein, the Court does not believe a sentence of imprisonment within the Guideline range is appropriate in this case.

The Court emphasizes that it has consulted the Guidelines and has taken them into account in sentencing Defendant; in fact, it is with the Guidelines that the Court initiated its assessment of an appropriate and reasonable sentence for Defendant.  The Court recognizes that Guideline ranges do not consist of an arbitrary set of numbers, but rather exist as the result of recommendations by an expert commission which has studied the sentencing process at great length.  Further, the Court has, in this case as in any other case, given heavy weight to the Guidelines in determining an appropriate and reasonable sentence for this Defendant.  The Court departs from the Guidelines in this case because it involves unusual circumstances that dictate such a departure, and because a number of the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence of imprisonment below the Guideline range, for the reasons set forth below.

1. *Other Child Pornography Possession Cases in Michigan*

One of the fundamental goals of the Guidelines has been, and remains, to reduce disparity among federal sentences.  This same goal is memorialized in 18 U.S.C. § 3553(a)(6) (the court "shall consider - - the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct"). Although adherence to the Guideline range will accomplish those goals in most cases, the Court does not find that to be the situation in this case. Moreover, strict adherence to the Guidelines range in this case would subject Defendant to a disproportionately and severely greater prison term than he would receive upon a like conviction in state court.

The Court has reviewed many recent cases involving convictions for child pornography in the State of Michigan, both in federal and state court, and the Court has found that the vast majority of defendants sentenced for possession of child pornography at about the same time as Defendant's conduct transpired have not been subjected to a term of imprisonment approaching the Guideline range in this case. Many of those cases are discussed immediately hereafter. For example, in November 2005, Michael David Hein was sentenced in Clare County to 14 months to seven years in prison for possession of child pornography on a computer and using a computer for a criminal act during June 2004. Mr. Hein received this sentence notwithstanding the fact that he had a prior child pornography related conviction on his record (for video taping two minors in a bathroom), for which he had been sentenced to one year in prison in Saginaw County in 2001.

In October 2005, Gary Conrad Heet was sentenced to 21 months in prison and two years supervised release after pleading guilty to possession of child pornography in the U.S. District Court for the Western District of Michigan. Mr. Heet was also fined $5,000. Mr. Heet was an employee of the U.S. Fish & Wildlife Service who used his work computer to access the child pornography that served as the basis of his conviction. In August 2005, Dominique Merritt was sentenced to 30 months in prison, a $20,000 fine and three years supervised release after pleading guilty to possessing child pornography. Mr. Merritt was sentenced in U.S. District Court for the Eastern

District of Michigan.

In May 2004, Brian Hartunian was sentenced in Oakland County Circuit Court to five months of imprisonment and probation.  Mr. Hartunian pled guilty to five counts of child pornography and five counts of using a computer to commit a crime.  In early 2004, John Gomez, then an active Oakland County deputy sheriff, pled guilty to possessing and distributing child pornography. He had over 4,500 images of child pornography, including one of an adult man raping an infant child.  The prosecutor described the case as "the worst of the worst" he had ever seen or heard about. Mr. Gomez received a one-year tether, three years probation and 500 hours of community service.  In January 2004, Robert D. Helferty, M.D. was sentenced in U.S. District Court for the Eastern District of Michigan to serve 18 months in prison (which was far below the Guideline range of 27-33 months) and fined $60,000 after pleading guilty to possession of child pornography. He also had his medical license suspended as a result.

In February 2002, Gregory Thomas Huizar, Sr. was convicted in Eaton County District Court of possessing child sexually abusive material, a misdemeanor offense punishable by a maximum of a one-year jail term and/or $1,000 fine.  Mr. Huizar was sentenced in April 2002 to 60 days in jail, $500 fines, $500 costs and a $50 crime victims rights fee.  It should be noted that (1) Mr. Huizar was employed as a patrolman by the Eaton Rapids Police Department, (2) he used a departmental computer to access approximately 300 child pornography web sites, (3) approximately 200 images of internet child pornography were downloaded onto the computer during his shift (which was at night and on which shift he worked alone), and (4) a web site search on AOL executed during his shift was for "daddy and daughter incest."

2. *Effect of Defendant's Plea*

11

Although Defendant pled guilty in this case, his plea was given straight up to the Indictment and no charges were dropped. As such, he has convictions on all three counts, which serves to enhance the Guideline range beyond what it would be for pleading guilty to one or two counts in exchange for dismissal of the remaining count(s). Because the case did not involve criminal acts of others, there was no ability to provide substantial assistance by providing relevant information on other criminal defendants in exchange for a reduced term. Finally, although Defendant immediately admitted responsibility for the crimes, agreed to plead guilty and saved all involved with the time and expense of going to trial, Defendant received little in return. Rather, the only benefit Defendant realized for his cooperation was the lowering of his offense level by three points for the acceptance of responsibility. In actuality, however, had Defendant proceeded to trial and been found guilty on all counts, Defendant would have faced only a slightly higher guideline range (97 to 121 months), but the Court still would have maintained the authority to sentence below that range. In other words, Defendant would have risked little by going to trial. Accordingly, I do not believe Defendant should, in essence, be "penalized" for having pled guilty.

3.      *18 U.S.C. § 3553(a)(1)*

Section 3553(a)(1) instructs that the Court is to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" This Defendant has a long history of personal responsibility. He has held the same job for the last 32 years. He has done so through a divorce and the episodes of mental illness that have plagued his ex-wife and his youngest son. He has done so despite being the primary care giver for his elderly and ill father. He has provided a home and care for his mentally ill son since his divorce. Defendant is also a longtime homeowner. Consistent with this history, Defendant exhibited personal responsibility by admitting his guilt and

12

pleading guilty to the instant offenses.

4.      18 U.S.C. §3553(a)(2)(A)

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed - - to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" In this case, the Court believes a term of imprisonment of 70-87 months would not accomplish any of those objectives.  In many of the cases the Court reviewed, persons were arrested, convicted and sentenced for arranging to meet minors for the purpose of engaging in sexual relations, not simply for receiving and/or distributing pornography.  More significantly, in the cases reviewed involving Michigan defendants seeking to engage in actual sexual relations with minor children, the prison terms imposed were far shorter than the bottom of the Guideline range to which Defendant is subject.

I believe it can unequivocally be said that the act or attempted act of engaging in sex with a minor is a much more abhorrent crime than that committed by a person who is sitting at his computer looking at pictures of children (particularly if the pictures viewed are not original and have been circulating on the web for some time, and there is no assertion by anyone that Defendant created any of the materials he possessed or provided to anyone). This viewpoint should not be interpreted as the Court condoning the behavior of Defendant or child pornography in general, for both are horrible things.  In assessing the fairness of the sentence to be imposed on this Defendant, however, this Court must consider the sanctions imposed in similar cases, including those imposed upon true child predators.

For example, in November 2005, Daniel Mathison was convicted for using the Internet to arrange a tryst with someone he thought was a 14-year old girl. Mr. Mathison pled no contest to the illegal use of the Internet for child sexual abuse and was sentenced to a term of only one year in prison. Mr. Mathison was a Detroit police officer at the time he engaged in such conduct, although there is no indication that he used his position in furtherance of his crime. On April 3, 2006, a Warren man, Erik Bacheldor, was sentenced to one year in jail and 5 years probation in Macomb Circuit Court. Mr. Bacheldor was arrested in December 2005, when he went to a house to have sex with a person he thought was a 15 year old girl. These cases are indicative of the terms of imprisonment to which child predators have been subject in Michigan, and the Court believes they strongly support sentencing Defendant below the Guideline range in this case.

First, the Court believes the Guideline range cannot accurately reflect the seriousness of the Defendant's conduct if child predators are subject to sentences far below the Guideline range. Second, sentencing a man who possesses child pornography to a term of six to seven years while a child predator receives only a one year jail sentence does not promote respect for the law; to the contrary, it subjects the law to ridicule, criticism and skepticism. Finally, this Court cannot conclude that a sentence within the Guideline range will provide just punishment for this Defendant when persons throughout the State of Michigan are receiving much shorter sentences for far more heinous crimes, including those defendants seeking to engage in sexual relations with minor children. For the foregoing reasons, the Court finds that the imposition of a term of imprisonment within the Guideline range would undermine the elements set forth in Section 3553(a)(2).

     *5.      18 U.S.C. §§ 3553(a)(2)(C) and (D)*

Sections 3553(a)(2)(C) and (D) provide that the Court must consider "the need for the

sentence imposed - - to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" In this case, a lengthy term of imprisonment will not facilitate either of these factors any more than a short, or even no, term of imprisonment would. As Dr. O'Neill, the registered sex offender therapist seeing Defendant since February 2005, has opined, Defendant will "do very well in treatment" and become accountable for his actions and the negative consequences to himself and others. Dr. O'Neill also stated that he believed that Defendant, with continued treatment, will develop new methods to face difficult situations and "give up" pornography and other short term, immediate escapes as remedies to his problems.

On the basis of the PSR and the evaluations of Dr. O'Neill,[1] the Court believes that the key to ensuring that the public is protected from further crimes of Defendant is continued therapy and treatment such that he is able to cope with difficult situations without resorting to alcohol or pornography. An extended jail sentence also will not help Defendant receive correctional treatment or achieve coping mechanisms; rather, it is only more likely to result in negative behavioral acts. As such, the Court concludes that alcohol and drug testing and/or treatment, as well as mandatory counseling with a registered sex offender therapist, as I am recommending for Defendant during his incarceration and which shall be required during his period of supervised release, will be far more effective in achieving the objectives of Sections 3553(a)(2)(C) and (D) than would a term of imprisonment pursuant to the Guideline range.

6.      *Sentencing Commission*

---

[1]The Court notes that it has read and considered the psychological evaluation of Defendant prepared by Eric Ambers, Ph.D., F.L.P. The Court does not, however, rely on the conclusions of Dr. Ambers in determining the appropriate sentence for Defendant.

15

For at least the last 50 years, a three-judge sentencing commission has existed in the Eastern District of Michigan. The purpose of these three-judge commissions has been and continues to be to meet, review the PSRs on defendants who were scheduled to be come before the three judges for sentencing, and discuss an appropriate sentence for each individual defendant. Although the consensus of the three-judge commission is not binding on any particular judge or defendant to be sentenced, the vast majority of the time the sentencing judge has imposed a sentence consistent with the consensus sentence reached by the three-judge commission. With the advent of the sentencing guidelines, and the limitation on judicial discretion which accompanied the guidelines, many judges opted out of the sentencing commissions. In the wake of *United States v. Booker*, 543 U.S. 220 (2005), rendering the guidelines "advisory," however, the sentencing commissions again afford judges of this District an invaluable avenue to assess their analysis of a case before imposing sentence.

In this case, because I believed that the term of imprisonment advised by the Guideline range greatly exceeded a just, fair and reasonable term of imprisonment based on the circumstances surrounding Defendant and the crimes at issue, I put this case before a sentencing commission to discuss an appropriate sentence for Defendant. The three-judge commission evaluating this case had a combined 111 years of legal experience and a combined 68 years of judicial experience. The commission reviewed the file and reached a unanimous decision that a prison sentence of 70-87 months greatly exceeded an appropriate disposition of this case. The commission's conclusions therefore strengthen my belief that imposing a prison term of 70-87 months pursuant to the Guidelines for this Defendant is unwarranted and unjustified, particularly as it would not serve the objectives of 18 U.S.C. § 3552(a) or the Guidelines themselves.

16

## VI.  CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendant be turned over to the Bureau of Prisons and be confined for a period of 30 months, with the recommendation that Defendant undergo alcohol and drug testing and/or treatment and counseling with a registered sex offender therapist. Defendant's term of imprisonment is to be followed by a three year term of supervised release.  Special conditions of Defendant's supervised release shall include (but are not limited to) alcohol and/or drug testing and/or treatment, at the discretion of the U.S. Probation Department, as well as counseling by a registered sex therapist with such frequency as deemed necessary by the U.S. Probation Department.  The Court also imposes a special assessment of $300 pursuant to 18 U.S.C. §3013(a). The Court waives costs of confinement.

Defendant shall self-report to the facility designated by the Bureau of Prisons on February 23, 2007, at or before 12:00 p.m.


IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  January 5, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 5, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290